NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4619
_____

LUIS FERNANDO ESTELA-GOMEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,
Respondent

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA No. A094-243-843
U.S. Immigration Judge: Honorable Dorothy Harbeck
_____

ARGUED: March 3, 2015

Before:  AMBRO, SCIRICA, and ROTH, *Circuit Judges*.

(Filed November 24, 2015)


Hayley A. Haldeman, Esq.
Thomas S. Jones, Esq.
Courtney L. Snyder, Esq. [ARGUED]
Jones Days
500 Grant Street
Suite 4500
Pittsburgh, PA  15219

     *Counsel for Petitioner*

Jacob A. Bashyrov, Esq.
Lisa M. Damiano, Esq. [ARGUED]
Kathryn L. DeAngelis, Esq.
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

     *Counsel for Respondent*

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

Luis Fernando Estela-Gomez petitions for review of the BIA's denial of his application for deferred removal under the United Nations Convention Against Torture ("CAT"). For the following reasons, the petition will be denied.

## I.

Estela-Gomez, a native and citizen of Colombia, has been in the United States continuously since 1994. He first entered the country as a non-immigrant temporary visitor with permission to remain for six months and has been here illegally since that time. **AR 212**. On June 22, 2011, he was convicted by guilty plea in New Jersey state court for receiving stolen property and for distribution/possession of a prescription drug (off-label Viagra). In December 2011, he pled guilty in federal court to unlawful distribution of prescription drugs under 21 U.S.C. §§ 331(t), 331(b)(1)(D), and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

353(e)(2)(A), and was sentenced to time served. **AR 445; AR 32**. He served concurrent three-year sentences for these offenses and the New Jersey Police Department referred him to the Department of Homeland Security ("DHS"). Following his convictions DHS initiated removal proceedings, charging him with removability under 8 U.S.C. § 1227(a)(1)(B) (overstay of visa) and § 1227(a)(2)(A)(iii) (aggravated felony conviction). **AR 421, 504.**

Estela-Gomez appeared in Immigration Court and conceded removability under § 1227(a)(1)(B) but initially contested removal for aggravated felonies in hopes of seeking post-conviction relief. **AR 254-55**. Ultimately the IJ found Estela-Gomez removable as charged, and he conceded, under advice from counsel, that he was not eligible for asylum or withholding of removal due to his drug conviction. *See* 8 U.S.C. § 1158(a)(2)(B) (time bar for asylum applications); *id.* § 1231(b)(3)(B)(ii) (particularly serious crimes).

A hearing solely to determine Estela-Gomez's eligibility for relief under CAT was held on April 16, 2013. He submitted several exhibits in support of his petition, including affidavits from friends and family members, a country report on Colombia, and an additional statement in support of his application for relief. **AR 214**. Estela-Gomez also testified on his own behalf. He described that he initially came to the United States due to fear of persecution from a Colombia guerilla organization, the Revolutionary Armed Forces of Colombia ("FARC"). He stated that, while in Colombia, his family received threats from the FARC demanding payment, and that his family reported the threats to the Colombian police, who advised against reporting such events given the danger

3

involved. **A349; A360-61**. The family reportedly attempted to relocate to escape the FARC, but were unsuccessful in evading the organization. **AR 361**. At this point, Estela-Gomez stated the family attempted to leave the country together. His sister was able to move to Australia, **AR 342-44**, but his parents remain in Colombia, **AR 337**.

Estela-Gomez has described one incident in which the FARC violently threatened him personally (the "1994 encounter"):

> One day, a day that I can never ever forget in my life. I was walking back from the University when some members of the FARC approached me and asked me why my family have not paid the money we were to given, I told them that my father[']s business is not going well at the moment and went we get the money we shall give them, before I could say another word they begun beat me, the beatings involved being clubbed on the head with baseball bats and they had cut my face on the side, I was bleed profusely from the injuries, I was terrorized, at some point, they stopped and warned me that if we do not give the money next time things will be much worse. I went home and then taken to the nearby hospital and then to the police. [*sic*]

**AR 55** (Br. to BIA). His briefing before the Immigration Judge ("IJ"), **AR 456**, his sworn statement submitted to the IJ, **AR 406**, and his testimony before the IJ, **AR 336**, all described this incident consistently.

Estela-Gomez stated in his testimony that his fear of future torture was related to the fate of his friend, Diego Fernandez. After his arrest, Estela-Gomez testified against Diego, who was the source of the stolen property underlying Estela-Gomez's theft conviction. Diego escaped to Colombia before he could face trial in the United States and was subsequently murdered. **AR 216**. Diego may or may not have been a member of the FARC. *See* **AR 223** ("Then he said he did not know that he was even a member of the FARC, and then upon finding out that Diego was killed in Colombia, now says that

4

Diego must have been a member of the FARC because of the manner in which he was killed."). Estela-Gomez alleges the FARC killed Diego for leaving FARC money and supplies behind in the United States, and he fears the FARC will kill him for testifying against Diego and thus causing their loss of property. **AR 216**.

After the hearing concluded, the IJ denied relief and entered an oral decision. She provided a summary of all evidence that had been presented during the hearing, including Estela-Gomez's testimony and documentary evidence. **AR 213-18**. She then outlined the legal principles relevant to Estela-Gomez's application, including the definition of torture and his burden to establish that it is more likely than not that he would be tortured upon return to Colombia. **AR 218-22**. She noted that he "was never tortured by the FARC in the past," that his parents are still alive in Colombia, that he had received no threats while in the United States, and questioned the strength of the logic regarding Diego's conviction and the impact it might have on Estela-Gomez's case. **AR 222-23**. Ultimately, she concluded that he had not met his burden, and entered an order of removal. **AR 223**.

Estela-Gomez, proceeding *pro se*, filed a timely appeal with the BIA. As the BIA noted in its opinion, he also filed a motion to reopen and a motion to submit supplemental briefing. **AR 2**. The supplemental brief addressed whether his drug trafficking charge was in fact a "particularly serious crime" and thus made him ineligible for withholding as he conceded in the proceedings before the IJ. **AR 5-15**. The BIA explicitly denied the motion to reopen, but made no ruling on the supplemental brief. **AR 2**, **4**. The BIA noted in its opinion that "the respondent argues that he suffered past persecution based on death threats he received, physical attacks against his family, economic harm and emotional

5

trauma." **AR 2**. The BIA affirmed the IJ's finding that Estela-Gomez was barred from asylum or withholding relief. *Id.* Next, the BIA confirmed the IJ reviewed the whole record and agreed with her findings. **AR 3-4**. The BIA concluded:

> [I]t would be [error] for the Court to conclude, by stringing together a serious of suppositions and impermissibly speculating about what would happen to the applicant if he returns to Colombia, that there is a clear probability that the respondent would be tortured in Colombia, because his friend Diego was killed.

**AR 4**. Thus, they dismissed Estela-Gomez's appeal and this petition followed.

## II.[1]

We review questions of law *de novo*. *Sandie v. Attorney Gen.*, 562 F.3d 246, 251 (3d Cir. 2009). Generally when the BIA issues its own opinion, our review is exclusively of that opinion. *Li v. Attorney Gen.*, 400 F.3d 157, 162 (3d Cir. 2005). To the extent the "'BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,' we review both the BIA and IJ decisions." *Oliva-Ramos v. Attorney Gen.*, 694 F.3d 259, 270 (3d Cir. 2012) (quoting *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005)).

## III.

Estela-Gomez urges two legal errors. First, that the BIA and the IJ erred by failing

---

[1] The BIA had subject matter jurisdiction to hear Estela-Gomez's appeal of the IJ's decision under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. §§ 1252(a)(1), (a)(2)(D). Because the IJ based Estela-Gomez's removal on his conviction for an aggravated felony, our jurisdiction is limited to review of constitutional claims and questions of law. *Pierre v. Attorney Gen.*, 528 F.3d 180, 184 (3d Cir. 2008). "[W]e lack jurisdiction to review factual findings underlying a removal order against an alien who has committed a controlled substance offense." *Green v. Attorney Gen.*, 694 F.3d 503, 506 (3d Cir. 2012).

to consider past evidence of torture, as is required by its own regulations; and, second, that the BIA erred in failing to rule on his motion to submit supplemental briefing, which amounted to a denial of due process.

**A.**

Estela-Gomez contends the IJ and the BIA failed to consider his testimony regarding past torture at the hands of the FARC. Estela-Gomez "is correct that 'all evidence relevant to the possibility of future torture' must be considered in reviewing a CAT application." *Green v. Attorney Gen.*, 694 F.3d 503, 508 (3d Cir. 2012) (quoting 8 C.F.R. § 1208.16(c)(3)). But "[t]he Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims." *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002) (citations omitted).

Here, the opinion demonstrates that the IJ did consider everything Estela-Gomez offered, first by stating explicitly "[t]he Court has considered the entire record carefully. All evidence and testimony has been considered, even if not specifically addressed, in the decision below."**AR 218.** Further, though the IJ does not cite to the 1994 encounter specifically in her order, she did list Estela-Gomez's asylum petition as part of the record before her (which also included a description of the incident). **AR 214**. Similarly, the BIA might have more explicitly tied its conclusion regarding no past torture to its definition of torture. However, the BIA did explicitly reference Estela-Gomez's allegations of "past persecution," thus providing an additional indication that it conducted a full review of the record. And its statement that "[w]e agree with the Immigration Judge that the respondent was never tortured in the past" indicates it viewed this as a factual

7

determination, rather than a statement that indicated a disregard for relevant evidence. **AR 3**.

This case is not one in which the BIA ignored swaths of evidence. *Contra Huang v. Attorney Gen.*, 620 F.3d 372, 388 (3d Cir. 2010) ("The BIA's analysis does little more than cherry-pick a few pieces of evidence . . . ."). And we have previously credited blanket statements such as the one made by the IJ here that she considered the entire record. *See Green*, 694 F.3d at 509 ("[A]lthough the IJ's opinion did not specifically discuss every individual piece of evidence, the IJ made clear that she had '[c]onsider[ed] all of the evidence of record.' This is all that is required . . . ." (citation omitted)). We have reversed final orders of the BIA "[w]hen deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision." *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003). Here, the IJ and the BIA did not err in their consideration of evidence of past torture. *Cf. Sevoian*, 290 F.3d at 178 ("While the Board's discussion of the issue could have been more detailed, we hold it was sufficient.").

### B.

Estela-Gomez also contends his due process rights were violated when the BIA failed to rule on his motion to supplement.

> In the administrative context, an alien: "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf . . .; and (3) has the right to an individualized determination of his [or her] interests."

*Kamara v. Attorney Gen.*, 420 F.3d 202, 211 (3d Cir. 2005) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). "To prevail on a procedural due process challenge to a decision by the BIA, an alien must make an initial showing of substantial prejudice."

*Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005). Estela-Gomez claims he was prevented from making an argument on his own behalf. But the only issue addressed in his motion to supplement was whether his federal drug conviction constituted an "aggravated felony" and thus made him ineligible for withholding, an issue he had conceded under advice of counsel before the IJ. The BIA did not prevent Estela-Gomez from making an argument on his own behalf, and the motion for supplemental briefing did not make a claim for ineffective assistance of counsel.[2] Again, the BIA could have exercised its discretion and explicitly denied Estela-Gomez's motion, but its failure to do so did not prejudice Estela-Gomez and thus there is no cognizable due process violation to merit remand.

## IV.

For the foregoing reasons, we will deny the petition for review.

---

[2] Estela-Gomez did later file such a motion to reopen, which was denied by the BIA on April 7, 2014. Estela-Gomez did not appeal this order. This further supports our conclusion that Estela-Gomez has suffered no prejudice.