**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-2682

_____

JOSE RAUL DIAZ HERNANDEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A201-245-671)
Immigration Judge: Hon. Annie S. Garcy

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 12, 2017

Before: SMITH, *Chief Judge*, JORDAN, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: February 1, 2017)

_____

OPINION*

_____

---

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Jose Raul Diaz Hernandez, a citizen of Mexico, is subject to an order of removal. He filed an application for asylum or withholding of removal under the Immigration and Nationality Act ("INA"), and also for relief under the Convention Against Torture ("CAT"). Because the Immigration Judge ("IJ") determined that Hernandez had committed a "particularly serious crime," he was not eligible for withholding of removal. The IJ also found that Hernandez's CAT claim was speculative and unsupported by objective evidence. The Board of Immigration Appeals ("BIA") affirmed the IJ's order of removal, and Hernandez now petitions for review. We will deny the petition.

I.     **BACKGROUND**

Hernandez illegally entered the United States in 1995, when he was fifteen, and has resided here since. He has a son who was born in 2007 and lives with him. In June 2011, Hernandez was arrested after selling five Oxycodone pills to an acquaintance. He was charged in New Jersey state court with distributing a controlled dangerous substance, in violation of N.J. Stat. Ann. § 2C:35-5(b)(5). Because his son was allegedly present during the attempted sale, Hernandez was also charged with committing an act of child neglect, in violation of N.J. Stat. Ann. § 9:6-3, though that charge was later dropped. He pled guilty to the distribution offense and was sentenced to 364 days in jail.

The United States Department of Homeland Security commenced removal proceedings and filed a Notice to Appear setting forth as the sole basis for removal that Hernandez was present in the country illegally, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). Hernandez admitted that he was in the country illegally, but he filed

2

an application for asylum or withholding of removal under the INA and also for deferral of removal under the CAT.

In his application, Hernandez argued that, if forced to return to Mexico, he would be recruited by drug cartels and kidnapped or tortured if he did not join. In support of that claim, he explained that his father had been kidnapped and ransomed by corrupt Mexican police officers and that a cousin had been kidnapped and still remains missing. An expert on drug trafficking in Mexico also claimed in an affidavit that Hernandez was at an increased risk of being forcibly recruited by crime groups because of his criminal history and his experience living in the United States. Hernandez said that since he had acquaintances and family members in Mexico who knew about his arrest, his criminal history would be common knowledge for local gangs. Finally, Hernandez relied on what he characterized as a general climate of corruption in Mexico, and he submitted a State Department Country Report describing pervasive kidnapping throughout the country. He also emphasized that his hometown of Jilotepec has one of the highest rates of kidnapping in the country.

Hernandez conceded that he was not eligible for asylum because the one-year statutory deadline had passed and his criminal conviction barred him from eligibility. The IJ then concluded that Hernandez had committed a "particularly serious" offense and therefore did not qualify for withholding of removal. In reaching that conclusion, the IJ noted that there is a presumption that a drug trafficking offense is particularly serious, so that the question was whether Hernandez had overcome that presumption. She explained

that, because Hernandez actually sold the Oxycodone, his involvement in the crime was not "peripheral" and therefore the presumption remained intact. (App. at 57, 151.)

Finally, the IJ denied Hernandez's request for relief under the CAT. She concluded that his claim was "speculative and unsupported by objective evidence to support his fears." (App. at 18.) In particular, she noted that Hernandez had engaged in a single drug transaction and had no gang connections while living in the United States. Likewise, Hernandez failed to show that any of his family members had a connection to gangs or had been subjected to torture. The IJ therefore held that Hernandez had not proven that his fears were more likely justified than not.

Hernandez then appealed to the BIA. It, however, agreed with the IJ that Hernandez "was not merely peripherally involved in the criminal activity" and that Hernandez had committed a "particularly serious crime." (App. at 6.) And, it found "no reason to disturb the Immigration Judge's determination that [Hernandez] did not demonstrate that it is more likely than not that he would suffer abuse amounting to torture … if he were removed to Mexico." (App. at 6-7.) This petition for review followed.

## II.    DISCUSSION[1]

Hernandez argues that the BIA erred when it affirmed the IJ's ruling that his crime was "particularly serious" and found that he did not qualify for relief under the CAT. Because the BIA issued its own decision on the merits, we review that decision rather than the IJ's. *Kaplun v. Att'y Gen. of U.S.*, 602 F.3d 260, 265 (3d Cir. 2010). We may

---

[1] The BIA had jurisdiction to review the IJ's final order of removal under 8 C.F.R. § 1003.1(b)(3). Our jurisdiction is pursuant to 8 U.S.C. § 1252(a)(1).

4

nevertheless consider the IJ's reasoning to the extent that the BIA relied on it. *Voci v. Gonzales*, 409 F.3d 607, 612 (3d Cir. 2005).

### A.        Hernandez's Crime Was Particularly Serious

The INA declares that an alien who "[has] been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States" and therefore is not eligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B)(ii). If an alien has committed an aggravated felony and been sentenced to an aggregate prison term of 5 years or more, then the alien is categorically ineligible for withholding. *Id.*; *Matter of Y–L–,* 23 I. & N. Dec. 270, 273 (Op. Att'y Gen. 2002) (explaining that " aliens convicted of aggravated felonies and sentenced to at least five years of imprisonment are *automatically* deemed to have committed a 'particularly serious crime'"). Outside of that categorical prohibition, which is inapplicable here,[2] the INA grants broad discretion to the Attorney General "to decide whether an alien committed a particularly serious crime."[3] *Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 214 (3d Cir. 2011) (citing *Chong* v. *Dist. Dir., INS*, 264 F.3d 378, 387 (3d Cir. 2001) (further citations omitted). We are thus obligated to accord a degree of deference to the BIA's determination of what constitutes a "particularly serious crime." *Chong*, 264 F.3d at 387.

---

[2] Hernandez was sentenced to 364 days imprisonment, not five or more years.

[3] However, the discretion granted to the Attorney General does not take away our jurisdiction to review the BIA's decision. *See Alaka v. Att'y Gen. of the U.S.*, 456 F.3d 88, 101-102 (3d Cir. 2006) (concluding that the grant of discretion was "insufficient to pull the 'particularly serious crime' determination out from the broad class of reviewable decisions that require the application of law to fact into the narrower class of decisions where judicial review is precluded").

5

Under existing precedent, the BIA rightly concluded that Hernandez's drug offense was a "particularly serious crime." In 2002, the Attorney General declared that outside of "the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances that justify treating a particular drug trafficking crime as falling short[,]" all drug trafficking offenses, which are by definition aggravated felonies,[4] should be presumed to be "particularly serious crime[s]." *Matter of Y–L–,* 23 I. & N. Dec. at 275-76. The Attorney General set forth six factors that must exist before an IJ can even consider whether "unusual circumstances" justify a departure from the presumption:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Id.* at 276-77.

Hernandez does not challenge the authority of the Attorney General to establish the presumption. He also does not challenge the BIA's conclusion that his conviction constitutes an aggravated felony. Instead, he simply argues that the BIA improperly assessed the factors in his case. We disagree.

The BIA agreed with the IJ that since Hernandez was the one who acquired and sold the drugs, "he was not merely peripherally involved in the criminal activity." (App.

---

[4] *See* 8 U.S.C. § 1101 (a)(43)(B) (defining "illicit trafficking in a controlled substance … including a drug trafficking crime" as an aggravated felony)

at 6.) We see no reason to disturb that conclusion. Hernandez claims that he was simply acting at the behest of an acquaintance and therefore had peripheral involvement. But, for the reasons expressed by the BIA, his involvement can hardly be said to be so minimal. Even though Hernandez satisfied most or all of the other *Y–L* factors,[5] he was more than "peripherally involved in the criminal activity," and he therefore did not qualify for a departure from the presumption that his crime was a "particularly serious" one.

**B.    Hernandez Did Not Qualify for Relief Under the CAT**

Hernandez also argues that the BIA erred in concluding that he did not qualify for relief under the CAT. In particular, he challenges the BIA's determination that he was unlikely to suffer torture upon returning to Mexico. In order to establish eligibility for relief under the CAT, an alien must demonstrate that it is more likely than not that he would be subject to torture. *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir. 2002). Whether an individual qualifies for relief "turn[s] on two questions: '(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?'" *Green v. Att'y Gen. of U.S.*, 694 F.3d 503, 507-08 (3d Cir. 2012) (quoting *Kaplun*, 602 F.3d at 271). In a case like this, in which the ground for removal is not the criminal record of the petitioner, we will only "reverse the BIA's

---

[5] The IJ also considered whether Hernandez's conduct had harmed his son, a minor. Hernandez claimed that his son was with a babysitter when Hernandez sold the pills, and aside from the dropped charge for child abuse, there is no other evidence in the record suggesting that Hernandez's son was present. Neither the IJ nor the BIA seemed to rely on this factor, and we do not consider it further. *See Kayembe v. Ashcroft*, 334 F.3d 231, 234-35 (3d Cir. 2003) (emphasizing that we only review BIA decisions on the grounds that the BIA considered in reaching its decision).

determination if the evidence compels a finding that it is more likely than not that the petitioner will be tortured if removed." *Kang v. Attorney Gen. of U.S.*, 611 F.3d 157, 164 (3d Cir. 2010).[6]

The IJ undertook a thorough consideration of the record and concluded that, while there was general evidence of state-tolerated torture in Mexico, Hernandez did not provide any evidence that he "would stand out, other than perhaps as a deportee from the United States, which is not an uncommon status in Mexico."[7] (App. at 18.) As a result, the IJ ruled that Hernandez had not met his burden to show that he would more likely than not be tortured in Mexico. The BIA affirmed, and we discern nothing that would compel a contrary conclusion.

## III. CONCLUSION

For the foregoing reasons, we will deny the petition for review.

---

[6] Congress has restricted our jurisdiction to review factual findings when an alien is removable "by reason of having committed [certain] criminal offense[s]," including a drug crime such as Hernandez's. 8 U.S.C. § 1252(a)(2)(C). Our authority to consider the factual record related to the BIA's determination that Hernandez was ineligible for relief under the CAT might therefore have been in doubt had Hernandez's crime been the basis for his removal. However, the Government did not rely on Hernandez's "commi[ssion] of a criminal offense" as a basis for removal. 8 U.S.C. § 1252(a)(2)(C). Instead, it relied solely on Hernandez's unlawful presence in the United States. Accordingly, the jurisdiction stripping provision does not apply, *see McAllister v. Attorney Gen. of U.S.*, 444 F.3d 178, 184 (3d Cir. 2006) ("[W]e read the jurisdictional bar of subsection (C) to apply when the *actual basis* for the final order of removal was the alien's commission of one of the enumerated offenses), and *Kang* provides the appropriate standard of review.

[7] Because the IJ thoroughly considered all of the evidence that was submitted, we also reject Hernandez's argument that the IJ and BIA committed legal error by ignoring relevant evidence in the record. *See Green v. Attorney Gen. of U.S.*, 694 F.3d 503, 508 (3d Cir. 2012) (noting that a similar argument "fail[ed] because [the petitioner] never identifies any evidence that was overlooked").