**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3732
_____

FITZROY GERALD GREEN,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A099-232-461)
Immigration Judge: Honorable Margaret R. Reichenberg
_____

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2012
_____

Before: RENDELL, SMITH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 13, 2012 )
_____

Elissa C. Steglich, Esq.
Amelia Wilson, Esq.
American Friends Service Committee
Immigrant Rights Program
89 Market Street
6th Floor
Newark, NJ 07102-0000

<u>Counsel for Petitioner</u>

Jason Wisecup, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

———————

OPINION OF THE COURT
———————

BARRY, Circuit Judge

Fitzroy Green ("Green") petitions for review of the BIA's denial of his application for deferred removal under the United Nations Convention Against Torture ("CAT"). For the following reasons, the petition will be denied.

## I. Background

### A. Removability Determination

Green, a native and citizen of Jamaica, entered the United States on a tourist visa in 2002. On September 16, 2006, his immigration status was adjusted to that of a lawful permanent resident. Less than a month later, on October 13, 2006, he was arrested on charges of possession of a controlled dangerous substance with intent to distribute. He pled guilty in New Jersey state court and was sentenced to one year of probation. In 2008, Green was arrested again on charges of possession and distribution of a controlled dangerous substance. He again pled guilty, and was sentenced to six months' imprisonment and two years' probation. On May 28, 2010, the Department of Homeland Security charged him with being removable from the United States under 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who had been convicted of a controlled substance offense. Green admitted his prior

convictions and raised no cognizable challenge to his removability, and the IJ found him removable as charged.

## B. CAT Application

Following the IJ's determination that he was removable, Green filed an application for deferred removal under CAT. In a subsequent hearing on his application, Green testified that he feared that he would be tortured by the Shower Posse, a powerful Jamaican drug gang formerly headed by Christopher "Dudus" Coke, if he were deported to Jamaica. He explained that sometime in 1998 or 1999, while visiting his godmother at a Kingston-area hospital, he witnessed a group of gunmen burst into a nearby hospital room and shoot a suspected police informant and the police officer who had been assigned to guard him, killing both men. Green recognized three of the assailants as members of the Shower Posse, and despite initially refusing to discuss the killings with police, he eventually gave a statement in which he identified the shooters. One of the shooters was subsequently arrested and convicted of murder, although Green was not asked to testify at the trial. According to Green, Jamaican police also arrested at least one, and maybe both, of the other shooters.

Green testified that as a result of his cooperation in this investigation, he and his family became targets of the Shower Posse. His sister, Winsome, was killed in 2001 or 2002, and his brother, Cleon,[1] was killed in 2009. Green testified to his belief that both slayings were acts of retribution carried out by members of the Shower Posse. Additionally, in 2002, Green himself was attacked in downtown Kingston by four men wielding knives and machetes, men he believes were Shower Posse gang members. Green sustained multiple stab wounds and spent the night in a hospital, but he did not report the attack to police. Several months after this attack, in July of 2002, Green left Jamaica for the United States and has not

---

[1] Although Green's brother is referred to as "Clan" at various points in the Administrative Record, we refer to him as "Cleon," as that is the spelling Green provided during his sworn testimony before the IJ. (A.R. at 107.)

3

returned since.

### C. IJ and BIA Decisions

Although the IJ found Green's testimony to be credible, she ultimately denied his application for deferred removal under CAT. She reasoned that even assuming *arguendo* that the Shower Posse still sought revenge against Green for his cooperation with authorities thirteen years ago, he had "failed to meet his burden to establish that the Shower Posse would be acting on behalf of the government of Jamaica or that the government of Jamaica would acquiesce in the actions of the Shower Posse," as required under CAT. (A.R. at 40.) Green appealed this decision to the BIA, which affirmed the IJ's ruling on the same ground, stating that Green "ha[d] not met his burden to establish that the government would turn a blind eye to the actions of the Shower Posse." (*Id.* at 3.) On October 4, 2011, Green timely petitioned for review.

## II. Jurisdiction & Standard of Review

Generally, we have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of the BIA denying relief under CAT. However, in cases involving certain categories of criminal aliens—including aliens, like Green, who are removable due to controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)—the statute provides that "no court shall have jurisdiction to review any final order of removal." 8 U.S.C. § 1252(a)(2)(C). Although it goes on to state that we may review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), we lack jurisdiction to review factual findings underlying a removal order against an alien who has committed a controlled substance offense.

When the BIA issues its own opinion, we generally review that decision as the final agency decision. *Sarango v. Att'y Gen. of the U.S.*, 651 F.3d 380, 383 (3d Cir. 2011). Here, however, the BIA's opinion "invokes specific aspects of the IJ's analysis and fact-finding in support of [its] conclusions," and so we are obliged to review both the decisions of the IJ and the BIA. *Voci v. Gonzales*, 409 F.3d

4

607, 613 (3d Cir. 2005). We review conclusions of law *de novo*, but give *Chevron* deference to the BIA's interpretation of the Immigration and Nationality Act. *Sarango*, 651 F.3d at 383.

### III. Discussion

Green raises three arguments in his petition. First, he challenges the IJ's factual determination that potential retribution carried out by the Shower Posse would not be attributable to the Jamaican government. Second, he asserts that neither the BIA nor the IJ "complete[d] the two-pronged analysis as mandated by this Court" in *Kaplun v. Attorney General of the United States*, 602 F.3d 260 (3d Cir. 2010). (Pet'r's Br. 8.) And third, he claims that "neither the BIA nor the IJ considered the totality of the evidence relevant to the likelihood of [his] torture." (*Id.* at 9.) None of these arguments has merit.

### A. Involvement of Jamaican Government

Article 3 of CAT provides that "[n]o State Party shall . . . expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Art. 3(1), S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. Relying on the administrative regulations implementing CAT, 8 C.F.R. § 1208.18(a)(1), we have stated:

> For an act to constitute torture under the [CAT] . . . , it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Pieschacon-Villegas v. Att'y Gen. of the U.S.*, 671 F.3d 303, 310 (3d Cir. 2011) (citation omitted). Both the IJ and the BIA found that Green had failed to satisfy the fourth of these

5

factors: the requirement of government involvement or acquiescence in torture. In his petition, Green argues that these findings amount to "judicial error and abused discretion." (Pet'r's Br. 13.)

This argument is aimed directly at the IJ's factual determination, which was adopted by the BIA, that the Jamaican government would not consent to or acquiesce in potential retributive violence carried out by the Shower Posse. As mentioned above, however, our jurisdiction over final orders of removal is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Recognizing this statutory limitation, we have repeatedly stated that "[w]e do not have jurisdiction to ascertain whether [a] factual finding was supported by substantial evidence." *Santos-Reyes v. Att'y Gen. of the U.S.*, 660 F.3d 196, 200 (3d Cir. 2011); *see also Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006) ("[F]actual or discretionary determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review."); *Alaka v. Att'y Gen. of the U.S.*, 456 F.3d 88, 103 (3d Cir. 2006) ("We do not have jurisdiction to review the merits of the IJ's factual conclusion[.]"). Thus, we lack jurisdiction to consider Green's argument that the IJ erred in determining that the Jamaican government would not consent to or acquiesce in the Shower Posse's actions.[2]

---

[2] We note, however, that even if we *did* have jurisdiction to consider this argument, the IJ's finding appears to be supported by substantial evidence. Although the IJ recognized that the Shower Posse "does exert strong influence in parts of Jamaica, particularly in the poorer areas of Kingston, and that there is corruption within the government of Jamaica," (A.R. at 40), she noted several facts which indicated that the Jamaican government would *not* acquiesce in torture carried out by the gang: (1) Jamaican law provides penalties for corruption; (2) Jamaican authorities pursued and arrested several Shower Posse members who participated in the killings witnessed by Green, and at least one suspect was tried and convicted of murder; and (3) Christopher "Dudus" Coke, the longtime leader of the Shower Posse, was apprehended by Jamaican authorities in 2010 and

## B. *Kaplun* Test

Green next argues that the IJ and BIA failed to apply the two-prong test undertaken by our Court in *Kaplun*. In *Kaplun*, we stated that whether future torture was likely turned on two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" 602 F.3d at 271. In reviewing Green's CAT application, the IJ assumed *arguendo* that the Shower Posse would try to harm Green, and then based her decision on the fact that this potential harm would not meet the legal definition of torture due to the lack of government involvement or acquiescence. The BIA followed the same approach, assuming a likelihood of harm under the first *Kaplun* prong and then determining that this harm would not meet the legal definition of torture under the second *Kaplun* prong. Green complains that it was error to assume harm under the first prong of the test and that the IJ and BIA instead were required to make an actual factual finding on that point.

This is a legal argument which we have jurisdiction to consider. The argument, however, is unconvincing for several reasons. First, Green failed to raise this *Kaplun* argument before the BIA, and a strong case can be made that he has not exhausted his administrative remedies and thus cannot raise the argument here for the first time. *See* 8 U.S.C. § 1252(d)(1); *Lin v. Att'y Gen. of the U.S.*, 543 F.3d 114, 120-21 (3d Cir. 2008). Even if he can raise this argument, however, *Kaplun* does *not* "specifically require[]" the IJ to make an actual finding as to each prong of the test. (Pet'r's Br. 11.) Rather, *Kaplun* states only that "there are two distinct parts" to the analysis and that "[t]he two parts should be examined separately." 602 F.3d at 271. Green bears the burden of showing *both* that he would likely suffer harm if returned to Jamaica *and* that the harm would amount to the legal definition of torture. Because the IJ and the BIA determined that Green had failed to satisfy the second prong of the *Kaplun* test, there was no need to make a factual

---

extradited to the United States to stand trial on drug trafficking and racketeering charges.

finding as to the first prong. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). Accordingly, Green's argument that the IJ and BIA misapplied *Kaplun* is without merit.

## C. Consideration of All Evidence in Record

Finally, Green argues that the IJ and BIA committed legal error by ignoring relevant evidence in the record tending to support his position that the Jamaican government turns a blind eye to the criminal acts of the Shower Posse. Green is correct that "all evidence relevant to the possibility of future torture" must be considered in reviewing a CAT application. 8 C.F.R. § 1208.16(c)(3). However, his argument on this point fails because he never identifies any evidence that was overlooked. Instead, he revisits his argument that the IJ and BIA "misinterpreted the country condition research," "erred in finding that the evidence 'falls short'" of satisfying CAT requirements, and "rule[d] contrary to the substantial country condition research." (Pet'r's Br. 18, 19, 22.) It is therefore apparent that Green's real argument is *not* that relevant evidence was ignored, but rather that the IJ incorrectly weighed evidence in making factual determinations. As stated above, however, we lack jurisdiction to consider such an argument.

Moreover, we are persuaded that the IJ *did* consider all relevant record evidence in rendering her decision. In support of his application, Green testified at length and submitted documentary evidence in the form of country reports and newspaper articles describing the gang culture in Jamaica and corruption within the country's government. Green himself admits that the IJ "accepted" his testimony and "gave credence to the U.S. Department of State report which relates that the Shower Posse 'exerts a strong influence within certain areas of Jamaica.'" (*Id.* at 11.) Moreover, although the IJ's opinion did not specifically discuss every individual piece of evidence, the IJ made clear that she had "[c]onsider[ed] all of the evidence of record." (A.R. at 40.) This is all that is required, as we have previously stated that

8

the IJ and BIA need not "discuss every piece of evidence mentioned by an asylum applicant." *Huang v. Att'y Gen. of the U.S.*, 620 F.3d 372, 388 (3d Cir. 2010). The IJ cannot be said to have ignored relevant record evidence, and Green's argument on this point is unpersuasive.

## IV. Conclusion

In sum, we discern no reason to disturb the decision of the BIA. Accordingly, Green's petition will be denied.