NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1299
_____

BRYAN JERMAINE JOHNSON,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A205-384-654)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2014
Before:  CHAGARES, JORDAN and GARTH, Circuit Judges

(Opinion filed: November 14, 2014)
_____

OPINION*
_____

PER CURIAM

Bryan Jermaine Johnson petitions for review of a final order of removal.  For the

following reasons, we will dismiss the petition for lack of jurisdiction.

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Johnson, a native and citizen of Jamaica, entered the United States in 2004 using a false passport. In 2012, he was convicted in federal court of conspiracy to distribute marijuana and bribery of a public official and was sentenced to eighteen months in prison. Expedited removal proceedings pursuant to 8 U.S.C. § 1228(b) commenced and a final administrative removal order was issued. Johnson was found removable for having committed an aggravated felony. See 8 U.S.C. § 1227(a)(2)(A)(iii). He did not contest removability, but sought relief on the basis that he would be tortured in Jamaica because of his past membership in the People's National Party ("PNP") and his cooperation with federal authorities in the prosecution of another Jamaican national. Johnson's case was referred to an Immigration Judge ("IJ"), who considered only whether Johnson was eligible for deferral of removal under the Convention Against Torture ("CAT").

Johnson testified that he was shot in 2002 by members of the Jamaican Labor Party ("JLP"), while visiting his aunt. He stated that the gunmen were searching for his uncle, who was also a member of the PNP. Although the event occurred many years ago and the PNP is now in power, Johnson testified that he stilled feared returning to Jamaica because the JLP would do anything to regain power. Johnson also feared returning to Jamaica because he assisted federal authorities by recording incriminating conversations with Shawn Davis, another Jamaican national involved in distributing marijuana. Johnson did not testify against Davis and had not personally heard from him in several years, but he believed that Davis knew he was an informant and was behind anonymous threats conveyed to Johnson's family in Jamaica. Johnson also feared that Davis'

brother, who is a police officer in Jamaica, would harm him in revenge for informing on his brother.

The IJ found Johnson's testimony credible, but denied relief because Johnson did not show that it was more likely than not that he would be tortured upon returning to Jamaica. Acknowledging a history of political violence, the IJ pointed out that the shooting incident happened many years ago and that Johnson's party, the PNP, is now in power. In this context, the IJ determined that Johnson failed to present evidence that he would be tortured by, or with the acquiescence of, the current Jamaican government. As for his fear of retribution from Shawn Davis, the IJ pointed out that no harm had come to Johnson's family in the years since the anonymous threats were made. Furthermore, the IJ noted that Davis' brother would be engaged in illegal acts and would not be representing the government if he targeted Johnson. Recognizing that the background evidence showed widespread corruption in Jamaica, the IJ noted that the government has made efforts to root out corruption in the police department. He therefore found that the government would not acquiesce in a vendetta by Davis' brother.[1] The Board of Immigration Appeals ("BIA") upheld the IJ's decision, and this petition for review followed.

---

[1] Johnson moved for reconsideration and asked to supplement the record with documents that he claimed his counsel failed to submit. The IJ denied the motion, finding that some of the evidence was already part of the record and that the rest was redundant and thus did not provide a basis for reconsideration. The IJ also rejected Johnson's assertion that his prior counsel was ineffective.

Although we generally lack jurisdiction to review final orders of removal issued against aliens who, like Johnson, are removable for having been convicted of an aggravated felony, see 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review constitutional claims or questions of law. See 8 U.S.C. § 1252(a)(2)(D). Our jurisdiction in this regard is limited to colorable claims. See Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010). Although a claim need not ultimately be meritorious to be deemed colorable, "a party may not dress up a claim with legal clothing to invoke this Court's jurisdiction." Id. at 187.

Johnson has not presented any colorable constitutional or legal claims. Although he argues that the IJ disregarded the fact that he had been shot by members of the JLP and applied the wrong legal standard for CAT relief, the record plainly shows that there is no basis for these claims. The IJ's decision reflects a reasoned consideration of the shooting incident, as well as the use of the correct legal standard. A.R. at 161-645. In addition, Johnson's argument that the IJ failed to consider whether he would be persecuted on account of a protected ground is irrelevant because that is not required for CAT relief – the only form of relief at issue. See Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005) (stating that an applicant must show with objective evidence that it is more likely than not that he will be tortured in the country of removal to obtain CAT relief). These insubstantial and frivolous claims do not provide a basis for jurisdiction. See Pareja, 615 F.3d at 187.

Turning to Johnson's arguments regarding the BIA's decision, he generally contends that the BIA did not give meaningful consideration to: (1) the evidence relevant to the possibility of future torture; (2) the evidence discussed by the IJ; and (3) a State Department report. As with the arguments regarding the IJ's decision, we conclude that Johnson has failed to make a colorable claim of legal error because the BIA's decision plainly reflects consideration of the evidence in the record. See A.R. at 2-3. Furthermore, the BIA is not required to "write an exegesis on every contention." Filja v. Gonzales, 447 F.3d 241, 256 (3d Cir. 2006) (quoting Mansour v. INS, 230 F.3d 902, 908 (7th Cir. 2000)). Instead, what is required is consideration of the issues raised in terms sufficient to enable us to perceive that the BIA has "has heard and thought and not merely reacted." Id. We are satisfied that the BIA's decision in this case meets that standard and that Johnson's claims to the contrary are insubstantial.

Johnson's remaining arguments are in essence a challenge to the weighing of evidence in this case. See, e.g., Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007) (arguments that the IJ or BIA "incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law"). As noted earlier, we lack jurisdiction in this case to consider such factual issues.[2] See Green v. Att'y Gen.,

---

[2] Johnson has identified two seemingly erroneous statements in the IJ's decision: i.e., that he "acknowledged" he was in the wrong place at the wrong time when he was shot and that he provided a letter from his father. It does not appear that Johnson testified to being in the wrong place at the wrong time, but instead adhered to his belief that he was shot due to his membership in the PNP. The letter in question is from an uncle. However, Johnson has not raised any legal questions related to these factual errors, let alone persuasively explained how they undermine the agency's decision that he failed to

694 F.3d 503, 507 (3d Cir. 2012) (holding that the factual determination regarding whether the government would consent to or acquiescence in torture is not reviewable pursuant to 8 U.S.C. § 1252(a)(2)(D)). Finally, to the extent that Johnson attempts to raise a claim of ineffective assistance of counsel, see Pet'r's Br. at 8, we note that the fleeting, unsupported accusation does not amount to a colorable claim. Cf. United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996) (noting that a claim in a motion under Federal Rule of Criminal Procedure 12(b)(1) is "colorable" only if it consists of "more than mere bald-faced allegations.")

In sum, because Johnson has failed to raise any colorable constitutional or legal claims, we lack jurisdiction over his petition for review. Accordingly, we will dismiss the petition.

---

show that it is more likely than not that he will be tortured, with the Government's acquiescence, if returned to Jamaica.