**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2387
_____

ALEXANDER WRIGHT
a/k/a ALEJANDRO WRIGHT,

Alexander Wright
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent

_____

On Petition for Review of a Final Order of the Board of Immigration Appeals
Immigration Judge: Honorable Walter A. Durling
(BIA No. A037-755-919)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 14, 2016

Before:  FUENTES, CHAGARES, and RESTREPO, *Circuit Judges*

(Filed: July 19, 2016)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge:*

Alexander Wright was placed in removal proceedings due to his two aggravated felony convictions. He conceded his removability as charged and applied for relief under the Convention Against Torture ("CAT"). The Board of Immigration Appeals denied his application, and Wright now appeals to this Court. Because Wright raises no colorable constitutional claims or questions of law, we lack jurisdiction to review his appeal. We will accordingly dismiss his petition for review.

## I.

Wright, a native and citizen of Jamaica, has been a lawful permanent resident of the United States since 1981. He was placed in removal proceedings as an alien convicted of two aggravated felonies—bank robbery in 1993 and possession with intent to distribute cocaine in 2012.[1] Wright conceded both charges of removability and applied for deferred removal under the CAT.[2] To obtain CAT relief, Wright must establish that he "more likely than not" will suffer harm if removed to Jamaica and that the harm would "amount to the legal definition of torture."[3] "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."[4]

---

[1] *See* 8 U.S.C. § 1227(a)(2)(A)(iii); *id.* § 1101(a)(43)(B), (F).
[2] *See* 8 C.F.R. § 1208.17.
[3] *Id.* § 1208.16(c)(2); *Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012).
[4] 8 C.F.R. § 1208.18(a)(1).

2

At his removal hearing, Wright claimed that he fears return to Jamaica for two reasons. First, he believes that he will be harmed by members of the People's National Party, one of the two main political parties in Jamaica. Wright testified that his brother was a member of the rival Jamaica Labor Party and was murdered in 1980 by members of the People's National Party. He explained that his brother's death was a direct result of political conflict between the two parties. He testified that when he visited Jamaica in 1987, he received a threatening phone message from members of the People's National Party telling him to leave Jamaica immediately. Wright has not been back to Jamaica since.

Second, Wright believes that he will be harmed by drug gangs in Jamaica due to his cooperation with federal authorities for his 2012 drug trafficking offense. Wright explained that he agreed to testify against one of his co-conspirators, Peter Davidson, who ultimately pled guilty soon after learning that Wright was a government witness. Wright testified that Davidson, who is also from Jamaica, is very wealthy and has strong connections with Jamaican gangs, and if Wright returned to Jamaica he would be targeted and killed by Davidson's associates. Wright testified that he received death threats in jail from Davidson's associates, and that other cooperating co-conspirators have also been threatened. His testimony was corroborated by a letter from the Assistant U.S. Attorney ("AUSA") with whom Wright cooperated. The AUSA explained that Davidson "still has many contacts in Jamaica" and that he had "put a price" on the head of another

cooperating co-conspirator who had returned to Jamaica.[5]  The AUSA also explained that another cooperating co-conspirator in the U.S. had his vehicle shot at, tires slashed, and house broken into.[6]  Wright testified that he could not rely on the Jamaican police for protection because they are corrupt and would "do anything for money."[7]

The Immigration Judge ("IJ") found Wright's testimony credible, but concluded that Wright failed to meet his burden for CAT relief.[8]  First, the IJ rejected Wright's claim that he would likely be tortured by political opponents in Jamaica, as his brother's death occurred 35 years ago during a period of political violence, and Wright, who was never politically active, has not been back to Jamaica in almost 30 years.  Second, the IJ explained that while it was "entirely possible" that Wright may be targeted for violence because of his cooperation efforts in the U.S., this was a mere possibility, not a probability.[9]  Moreover, the IJ explained that Wright did not provide sufficient evidence to demonstrate that the Jamaican police would not protect him because they could be "bought off."  To the contrary, the Government's evidence showed that the Jamaican government has taken a strong public stance against official corruption and has been making efforts to identify those individuals who are corrupt.  Accordingly, the IJ denied Wright's application for CAT relief and ordered him removed.

---

[5] A.R. 159.

[6] *Id.* at 159-60.

[7] *Id.* at 122.

[8] *Id.* at 40-45.  In his oral decision, the IJ explained that "[e]ven assuming everything the respondent's testified is true, respondent necessarily cannot meet his burden of proof, which is very high."  *Id.* at 42.

[9] *Id.* at 43.

The Board of Immigration Appeals ("BIA") agreed with the IJ's determination that Wright failed to establish a probability that he will be tortured if removed to Jamaica.[10]  The BIA explained that Wright's claim is based on a "chain of assumptions and fear of what might happen," rather than on evidence that meets his more-likely-than-not burden of proof.[11]  It noted that while the record showed isolated instances of corruption in Jamaica, "the Jamaican government is actively engaged in rooting out official corruption."[12]  Thus, the BIA agreed with the IJ that Wright failed to show that it was likely that the Jamaican government would "turn a blind eye" if he were seriously threatened with torture.[13]  Accordingly, the BIA concluded that Wright's claim was too speculative to warrant a grant of protection under CAT, and it dismissed Wright's appeal. Wright timely petitioned this Court to review the BIA's decision.[14]

## II.

Wright claims that the BIA abused its discretion when it denied his application for relief under the CAT.  The Government contends that we lack jurisdiction to review Wright's petition for review.  Indeed, the Immigration and Nationality Act restricts our jurisdiction to review final orders of removal against aliens whose basis of removal is an

---

[10] *Id.* at 3-5.
[11] *Id.* at 5.
[12] *Id.* at 4.
[13] *Id.* at 5.
[14] We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1).  Where the BIA's decision "invokes specific aspects of the IJ's analysis and factfinding in support of [its] conclusions," as it did here, we review the decisions of both the IJ and the BIA. *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005).

5

aggravated felony conviction.[15]  We have made clear that when a petitioner "is subject to a final order of removal by reason of having committed an aggravated felony, we review his petition only to the extent it raises questions of law or constitutional claims, and purely factual or discretionary determinations are outside our scope of review."[16] Because the grounds for Wright's removal are his aggravated felony convictions— grounds that he concedes—our jurisdiction is limited to constitutional claims and legal questions.[17]

Wright argues that "[c]learly, [he] is in grave danger should he be forced to return to Jamaica."[18]  He asserts that "[t]here is no doubt that [he] has been labeled a snitch by the Jamaican drug dealing community and that he will be killed upon his return to Jamaica by either the Jamaican police or others with willful blindness by the public officials."[19]  Wright essentially disagrees with the BIA's conclusion that he failed to prove a probability of future torture.  We explained in *Kaplun v. Attorney General* that what is likely to happen to an alien upon removal is a factual determination made by the IJ, reviewed for clear error by the BIA, and unreviewable by this Court when the alien's removal is based on him having committed an aggravated felony.[20] For example, the *Kaplun* court distinguished the factual question of "what is likely to happen to the

---

[15] *See* 8 U.S.C. § 1252(a)(2)(C).

[16] *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)).

[17] *See Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (en banc).  We exercise *de novo* review over constitutional claims and questions of law.  *Yusupov v. Att'y Gen.*, 518 F.3d 185, 197 (3d Cir. 2008).

[18] Pet'r's Br. 8.

[19] *Id.*

[20] 602 F.3d at 265, 269-71.

petitioner if removed," from the legal question of whether "what is likely to happen amount[s] to the legal definition of torture."[21]   Likewise, in *Pieschacon-Villegas v. Attorney General*, we explained that we lacked jurisdiction to review the factual question of whether public officials would likely consent or acquiesce to the petitioner's mistreatment, but we could review the legal question of whether the BIA adjudicated the petitioner's claim under an incorrect legal standard.[22]   Thus, to the extent that Wright challenges the BIA's factual determination that he failed to prove a probability of future mistreatment in Jamaica or that public officials in Jamaica would likely acquiesce to his mistreatment, we lack jurisdiction to review his claims.

Wright also seems to claim that the IJ and BIA committed legal error by ignoring relevant evidence in the record, although he never identifies any evidence that was overlooked.[23]   The CAT regulations require "all evidence relevant to the possibility of future torture" to be considered when assessing whether it is more likely than not that an applicant would be tortured upon removal.[24]   Wright points out that, per the regulations, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."[25]   But the IJ explained that, even assuming everything Wright said was true, he still could not meet his burden under CAT because his evidence was insufficient to support the criterion that he would be harmed with the consent or

---

[21] *Id.* at 271.

[22] 671 F.3d 303, 309-10 (3d Cir. 2011).

[23] *See* Pet'r's Br. 6 (stating that abuse of discretion occurs when the agency "fail[s] to consider significant factors," "attach[es] weight to irrelevant factors," and "disregard[s] important factors").

[24] 8 C.F.R. § 208.16(c)(3).

[25] *Id.* § 208.16(c)(2).

acquiescence of public officials in Jamaica. The BIA agreed with this factual finding, after conceding that the record supported finding isolated instances of corruption. We have no jurisdiction to ascertain whether a factual finding was supported by substantial evidence.[26] We conclude only that Wright's evidence, including his credible testimony, was fully considered, and it is not within our power of review to disturb the agency's factual findings.

### III.

For the reasons set forth above, we will dismiss Wright's petition for review.

---

[26] *Green*, 694 F.3d at 507.