NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3645
_____

AUGUSTINO SMITH,

Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A041-362-524)
Immigration Judge: Honorable Kuyomars Q. Golparvar
_____

Argued on May 23, 2017
Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: June 22, 2017)


Michelle Movahed [Argued]
Nicholas M. Insua
McCarter & English
100 Mulberry Street
Four Gateway Center
14th Floor
Newark, NJ 07102
        *Counsel for Petitioner*

Chad A. Readler, Acting Assistant Attorney General
Shelley R. Goad, Assistant Director
Tim Ramnitz, Attorney [Argued]
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
     *Counsel for Respondent*

————————

OPINION[*]

————————

HARDIMAN, *Circuit Judge*.

Augustino Smith petitions for review of an order of the Board of Immigration Appeals (BIA) denying his request for deferral of removal under the Convention Against Torture (CAT). For the reasons that follow, we will dismiss the petition.

I

A native of Jamaica, Smith entered the United States lawfully in 1987 and became a legal permanent resident. Ten years later, he was convicted of robbery and controlled substance crimes in New Jersey and imprisoned. Smith was removed to Jamaica in 2002, and after just two months there, he was assaulted by a group of men. After a conversation about America, a man accused Smith of being gay, used "derogatory slurs," and, along with others nearby, "started beating [Smith] up." App. 38. That night, Smith was kicked out of his stepfather's house for being, in his host's words, "a faggot." App. 39. Within

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

days, Smith fled back to the United States and remained here undetected from 2002 to 2010.

In 2010, Smith was arrested and convicted for illegal reentry under 8 U.S.C. § 1326(b)(2). After spending five years in prison, Smith's removal order was reinstated under 8 U.S.C. § 1231(a)(5). He applied for, *inter alia*, deferral of removal under the CAT. The Immigration Judge (IJ) denied this request.

Smith appealed and the BIA affirmed the IJ's decision, finding Smith "has not demonstrated that, upon his removal, it is more likely than not that he will be tortured by or with the acquiescence (including 'willful blindness') of a public official." App. 7.

## II[1]

Because Smith is removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i) as an aggravated felon and controlled substance offender, our review is limited to constitutional and legal questions. 8 U.S.C. § 1252(a)(2)(C)–(D). Legal questions include "whether the BIA used the correct standard in reviewing the IJ's decision and whether the BIA assigned to the petitioner the correct burden of proof." *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012) (citation omitted) (alterations omitted). We review legal questions de novo. *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012).

## III

---

[1] The IJ had jurisdiction to determine Smith's eligibility for CAT protection and the BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1208.31(e). We generally review the BIA's opinion as a final agency decision, but where, as here, the BIA "invokes specific aspects of the IJ's analysis and fact-finding," we review both decisions. *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012) (citation omitted).

3

Smith claims the BIA erred when it affirmed the IJ's decision denying him CAT relief. Under the implementing regulation, 8 C.F.R. § 1208.18, an alien may not be removed to a country where "it is more likely than not that [he] will be tortured." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 349 (3d Cir. 2008). Whether torture will likely occur depends on two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). The first is an unreviewable factual question, but the second is a cognizable legal question. The legal definition of torture requires, among other things, acquiescence in the activity by the relevant government. *See Green*, 694 F.3d at 507.

Smith claims the BIA's "legal analysis is fatally flawed" for several reasons. Smith Br. 17. We will address his principal arguments in turn.

A

Smith first argues that the IJ and BIA erred by failing to discuss whether the Jamaican government acquiesced in his 2002 beating. *See* Smith Br. 21 (claiming the BIA "fail[ed] to mention, or even account for, [his] evidence that police officers witnessed, but took no action to prevent, the severe beating he suffered in 2002").

Although the IJ and BIA did not specifically discuss the police officers near the 2002 altercation, it is inaccurate to say they did not consider that fact. After Smith testified at his hearing, "when I was being attacked the police [were] there and did nothing," the IJ responded, "I understand that and I appreciate all the documents that you

4

submitted and your testimony today." App. 104. The IJ went on to cite the correct standard for government acquiescence in torture and concluded that the 2002 beating was not "torture by the government in any way, shape, or form." App. 40. The BIA likewise "recognize[d] the applicant's testimony regarding the incident of harm" before agreeing it wasn't probative of the likelihood of future torture. App. 7.

More importantly, the IJ found (and the BIA agreed) that the country conditions were such that the Jamaican government was unlikely to participate or acquiesce in any *future* torture of Smith. The IJ specifically discussed country conditions, finding they have improved. *See* App. 41 (noting the "significant strides" taken since the Ninth Circuit's finding in *Bromfield v. Mukasey*, 543 F.3d 1071 (9th Cir. 2008), that Jamaican country conditions were egregious towards gay men in 2005). The IJ found that while "there's still discrimination and bullying . . . by members of the general public in Jamaica," and the police need to do more, "individual police officers [have] express[ed] sympathy for the plight of the LGBT community and [are] work[ing] to prevent and resolve instances of abuse." App. 42. Therefore, the IJ concluded Smith "has not met his burden" with respect to the likelihood of the government's involvement in torturing LGBT individuals. *Id.*

The IJ and BIA also correctly stated the level of government involvement necessary for torture under the CAT—the government must be willfully blind to or acquiesce in the requisite treatment, *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007)—before concluding the government's actions would not meet this threshold. After

5

mentioning Jamaica's country conditions and Smith's past experience, the BIA found that the "discrimination, harassment, and occasional acts of violence" in Jamaica were insufficient to produce the requisite likelihood of torture. App. 7. The BIA affirmed the IJ's decision on this point, finding the IJ "properly considered the applicant's claim, and properly concluded that he did not meet his burden." *Id.*

It appears that Smith's real dispute with respect to the police incident is with the IJ's and BIA's determination that the government is not likely to acquiesce in torture upon his return. On his view, the 2002 beating coupled with the country evidence about violence toward LGBT individuals in Jamaica is enough to demonstrate a sufficient likelihood of torture under the CAT standard. But the IJ and BIA weighed the evidence differently, and assertions "that an Immigration Judge or the BIA incorrectly weighed evidence [or] failed to consider evidence . . . are not questions of law under § 1252(a)(2)(D)." *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007) (citations omitted). Thus, we don't have jurisdiction to review the IJ's and BIA's determination that the Jamaican government is not likely to acquiesce in any torture of Smith. *See Green*, 694 F.3d at 507.

Since the IJ and BIA reviewed the 2002 incident, as required by 8 C.F.R. § 1208.16(c)(3)(i), along with improved country conditions, in making their determination that it was not likely for the government to acquiesce in any torture upon his return, Smith could not prove his case under the CAT standard. *See Green*, 694 F.3d at 507. Accordingly, the IJ was not required to address whether the 2002 incident

6

involved acquiescence by the police. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

B

Smith also contends that the IJ and BIA ignored probative evidence of likely future torture: a letter submitted to the IJ by his mother, Veronica Smith, expressing fear for her son's safety in Jamaica based on threats she heard. Smith claims it was legal error for the IJ and BIA to fail to "mention the letter from [his] mother explaining that, on trips to Jamaica she had taken since [he] was incarcerated in 2010, she was approached" and told that "if he was to be sent back to Jamaica [she] would be buying a black dress." Smith Br. 23.

Smith is right that "all evidence relevant to the possibility of future torture" must be considered. *Pieschacon-Villegas*, 671 F.3d 303, 313 (3d Cir. 2011) (quoting 8 C.F.R. § 208.16(c)(3)) (finding BIA at fault for not considering several pieces of evidence, including "threats allegedly made against [the petitioner] and his family"). The IJ and BIA "lack[] authority to ignore" any evidence relevant to future torture. *Id.* at 314. In applying this rule, we have reversed BIA decisions when they "totally ignore[] the most forceful record evidence" supporting the petitioner. *Kang v. Att'y Gen.*, 611 F.3d 157, 166 (3d Cir. 2010) (several clear instances of past torture).

At the same time, an IJ's opinion need "not specifically discuss every individual piece of evidence." *Green*, 694 F.3d at 509. It suffices if the IJ accepts lengthy testimony

7

from the petitioner along with all of his "submitted documentary evidence," and makes "clear that [he] had 'considered all of the evidence of record.'" *Id.* at 509 (alterations and citation omitted).

In this case, although the IJ didn't discuss Smith's mother's letter in his oral decision, he unquestionably accepted it as documentary evidence. While reviewing all submitted evidence during the hearing, the IJ stated "there appears to be a letter from Veronica Smith." App. 54. Smith then asked the IJ whether he had the letter. The IJ confirmed receipt of the letter and admitted it into evidence. And after Smith's testimony, shortly before the IJ "dictate[d] [his] oral decision," the IJ told Smith: "I appreciate *all* the documents that you submitted and your testimony today." App. 104 (emphasis added). As in *Green*, the presumption applies that when an IJ states that he reviewed the record, he actually "consider[ed] all relevant record evidence in rendering [his] decision." 694 F.3d at 508.

In any event, the letter from Smith's mother was not so important as to require an in-depth discussion to demonstrate that the IJ "truly performed a full review of the record." *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010). The letter recounts threats from anonymous private actors and does not rebut the IJ's conclusion—after looking at country conditions and reports from both sides—that the government is not likely to acquiesce in violence against Smith.

We are satisfied both that the IJ did evaluate the letter along with all other record evidence and that the IJ and BIA were not required to specifically discuss it given their

8

other conclusions regarding the absence of government acquiescence in any future torture. And to the extent that Smith "quarrels over the exercise of discretion" to not discuss the letter at length, this contention doesn't raise a question of law. *Cospito v. Att'y Gen.*, 539 F.3d 166, 170 (3d Cir. 2008) (per curiam) (citation omitted).

IV

We have considered all of Smith's other arguments and find them unmeritorious. Accordingly, we will dismiss Smith's petition for review.

9