NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3329
_____

OMARLEY CURNANDY HUDSON, AKA Hudson O'Maley, AKA Shelby Clark,
AKA Stephen Young, AKA Shelby Hernandez Clark,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Agency No. A209-308-350)
Immigration Judge:  Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 2, 2018

Before:  SHWARTZ, ROTH and FISHER, *Circuit Judges*.

(Filed: February 7, 2019)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Omarley Hudson petitions for review of a final order of removal. To the extent that Hudson argues that the Board of Immigration Appeals applied an incorrect standard of review, we will deny his petition. We will dismiss the remainder of the petition for lack of jurisdiction.

## I.

Hudson is a native and citizen of Jamaica. He grew up in a Kingston neighborhood that was heavily influenced by competing political parties: the People's National Party and the Jamaica Labor Party. His mother supported the People's National Party in exchange for financial and other support.

The parties exercised influence and control within Hudson's neighborhood. Residents avoided opposition areas for fear of physical violence. On one occasion, Hudson was beaten with bats and cut with a knife when he walked home from school in the rival party area. Several of his friends lost their lives at the hands of the political parties.

Around age thirteen, Hudson began assisting the People's National Party. Twice, he was given a gun and instructed to convince reluctant voters to vote for the party. When he was about sixteen years old, he was pressured to contribute more and prove himself by murdering his neighbor, a rival party member. Instead, Hudson fled to the United States in 2002. He overstayed his visitor's visa and has remained in the United States, accruing convictions for drug and firearm offenses.

In 2017, Hudson was ordered to be removed because of his aggravated felony convictions.[1] He expressed a reasonable fear of returning to Jamaica and was ultimately referred to an Immigration Judge (IJ) for withholding proceedings.[2] He applied for protection under the Convention Against Torture (CAT), testifying that his "cousin informed him before he left Jamaica that he was considered a snitch" and that "the enforcement arm" of the party was "looking for him."[3] The IJ denied his application for CAT protection, finding that although he did not lack credibility, there is no evidence that anyone in Jamaica is currently looking for him, or that the government would acquiesce to any torture of Hudson. The IJ found that these fears were not objectively corroborated.

The BIA affirmed. It ruled that the IJ did not clearly err and that Hudson's "speculation as to future harm is insufficient to meet his burden of proof."[4]

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1).[5] Where a removal order is based on an aggravated felony conviction, we have jurisdiction to review only "constitutional claims or questions of law,"[6] which we review de novo.[7]

---

[1] 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(b)(1), (2).

[2] *See* 8 C.F.R. § 1208.31(e) (providing for referral of case to IJ where alien has reasonable fear of persecution or torture).

[3] App'x 18.

[4] App'x 9.

[5] *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008).

[6] 8 U.S.C. § 1252(a)(2)(C), (D); *Pierre*, 528 F.3d at 184.

[7] *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 63 (3d Cir. 2007), *as amended* (Mar. 6, 2007).

III.

Hudson raises three arguments: (1) the BIA applied the incorrect standard of review; (2) the evidence showed that it is more likely than not that he will be tortured if he returns to Jamaica; and (3) the evidence showed that public officials in Jamaica would be willfully blind to his torture. "We . . . need to determine, as to each claim, whether it involves a constitutional or legal question over which we have jurisdiction, and only then may we analyze the merits."[8]

Hudson argues, first, that the BIA applied an incorrect standard of review—more specifically, that the BIA's opinion was "devoid of analysis" and therefore, "it is unclear under what standard the [BIA] reviewed the underlying decision."[9] On this basis, Hudson requests a remand to the BIA for additional analysis.

Whether the BIA applied the correct standard of review is a legal question that we have jurisdiction to review.[10] Having reviewed the argument, we conclude that it fails on its merits. The BIA did not apply an incorrect standard, nor is its standard unclear. The BIA correctly explained that it reviews the IJ's findings of fact under the "clearly erroneous" standard and all other issues, including issues of law, discretion, and

---

[8] *Alaka v. Att'y Gen.*, 456 F.3d 88, 102 (3d Cir. 2006), as amended (Aug. 23, 2006).
[9] Appellant's Br. 14.
[10] *See Alaka*, 456 F.3d at 103; *Pareja v. Att'y Gen.*, 615 F.3d 180, 187-88 (3d Cir. 2010).

judgment, under a de novo standard.[11] Then, in light of Hudson's arguments attacking the IJ's factual determinations, it reviewed those determinations for clear error. It considered several pertinent facts, such as that fifteen years had passed since Hudson was last threatened and that letters from his family did not mention any threats. This constitutes an adequate review of the IJ's factual determinations under the correct standard. The opinion is only five paragraphs long, but brevity is not error. "The [BIA] 'is not required to write an exegesis on every contention,' . . . but only to show that it has reviewed the record and grasped the movant's claims."[12] The BIA did so.

Hudson's second argument is that he carried his burden to show that he is more likely than not to be tortured if returned to Jamaica. We begin by determining whether this argument "involves a constitutional or legal question over which we have jurisdiction."[13] Hudson attempts to frame the argument as a legal one. He contends that the IJ failed to consider all of the evidence and that as a result, the BIA was unable to articulate a rationale for affirming. He also asserts that the IJ erred by requiring corroborative evidence that was not reasonably available.

Despite Hudson's focus on the IJ's opinion, our review "extends only to the decision of the BIA."[14] Even if Hudson is correct that the purported shortcomings in the

---

[11] 8 C.F.R. § 1003.1(d)(3)(i), (ii).

[12] *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002) (citation omitted).

[13] *Alaka*, 456 F.3d at 102.

[14] *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003) ("[O]nly if the BIA expressly adopts or defers to a finding of the IJ, will we review the decision of the IJ.").

IJ's opinion should be imputed to the BIA, we lack jurisdiction to consider this argument because, upon examination, it is clearly factual, not legal. Hudson does not point to any specific fact that the IJ overlooked; rather, he recaps the evidence and asserts that he carried his burden. In addition, both the IJ and the BIA fully articulated their rationales. The IJ's discussion of the evidence spans multiple pages. The BIA affirmed based on the evidence that no one has threatened Hudson in the past fifteen years, that supportive letters from his family did not mention any threats, and that Hudson's "own testimony omitted any description of such threats."[15] The BIA did not base its determination on any lack of corroborating evidence.

In sum, Hudson's second argument is essentially factual, and we lack jurisdiction to review it.[16] "[A]rguments such as that an [IJ] or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law . . . ."[17] "Artful labeling" does not confer jurisdiction on us.[18]

Hudson's third and final argument is that the IJ erred in concluding that the evidence did not show that the Jamaican government would acquiesce in the torture that,

---

[15] App'x 9.

[16] *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006).

[17] *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007).

[18] *Id.* (holding that allegations of "'clear factual mistakes' that resulted in a 'denial of due process'" do not amount to constitutional claims subject to review under § 1252) (internal citations omitted).

he argues, is likely. He argues that because the BIA never addressed the issue, we should remand for further factual determinations.

Because the BIA concluded that the IJ did not clearly err in finding that Hudson was not likely to be tortured, it did not need to reach the issue of Jamaican public officials' acquiescence. Failure to meet either prong—likelihood of torture or acquiescence of public officials—is fatal to a claim under the CAT. [19] Therefore, the BIA did not need to reach the question of acquiescence, and we need not remand for factual determinations on this issue.

IV.

For the foregoing reasons, we will deny the petition in part and dismiss it in part for lack of jurisdiction.

---

[19] *Green v. Att'y Gen.*, 694 F.3d 503, 508 (3d Cir. 2012) ("Green bears the burden of showing *both* that he would likely suffer harm if returned to Jamaica *and* that the harm would amount to the legal definition of torture. Because . . . Green had failed to satisfy the second prong . . . , there was no need to make a factual finding as to the first prong."); *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("[C]ourts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").