NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2641

_____

WILSON PENA-LOJO,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A087-392-768)
Immigration Judge:  Jason L. Pope
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2021

Before:  SMITH, Chief Judge, MATEY and FISHER, *Circuit Judges*.

(Filed: November 5, 2021)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

        Wilson Pena-Lojo, a Guatemalan citizen and environmental activist, entered the

_____

        [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

U.S. illegally. When removal proceedings began, he applied for deferral of removal under the Convention Against Torture (CAT).[1] The Immigration Judge (IJ) denied Pena-Lojo's application and the Board of Immigration Appeals (BIA) affirmed. Pena-Lojo petitions for review. We will grant the petition.[2]

Under the legislation that implements the CAT, it is "the policy of the United States not to . . . effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture."[3] An individual applying for CAT protection must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal."[4] Torture is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . for such purposes as . . . punishing . . . , intimidating

---

[1] In 2018, Pena-Lojo pled guilty in New Jersey state court to endangering the welfare of a child through sexual conduct, N.J. Stat. Ann. 2C:24-4A(1). His conviction renders him ineligible for withholding of removal under both the Immigration and Nationality Act and the CAT. 8 U.S.C. § 1231(b)(3)(B)(ii). His only requested relief is deferral of removal under the CAT. *See* 8 C.F.R. § 208.16(c)(4).

[2] We have jurisdiction under 8 U.S.C. § 1252(a)(4). "Because the BIA here adopted the IJ's reasons concerning the denial of CAT relief, 'we review both the BIA and IJ decisions.'" *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020) (quoting *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270 (3d Cir. 2012)). "[F]actual challenges to CAT orders" are reviewed under the "highly deferential . . . . substantial-evidence standard: The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review questions of law *de novo. Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).

[3] *Auguste v. Ridge*, 395 F.3d 123, 133 (3d Cir. 2005) (quoting Foreign Affairs Reform & Restructuring Act of 1998, Pub. L. No. 105-277, § 2242(a), 112 Stat. 2681).

[4] 8 C.F.R. § 208.16(c)(2).

or coercing."[5] The pain or suffering must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official."[6]

The IJ concluded that, in Guatemala, Pena-Lojo would be merely harassed, not tortured. Pena-Lojo argues that the BIA should not have affirmed because the IJ impermissibly ignored evidence weighing in favor of granting relief. We agree.

The applicable regulation directs the IJ to consider "all evidence relevant to the possibility of future torture"—not only "[e]vidence of past torture inflicted upon the [particular] applicant," but also "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal" and "[o]ther relevant information regarding conditions" there.[7] Indeed, "[c]ountry conditions alone can play a decisive role [in determining if relief is warranted]."[8] And while the agency "need not 'discuss every piece of evidence,'"[9] it "may not ignore evidence favorable to the [petitioner]."[10] "[I]f [evidence] is to be disregarded, we need to know why."[11]

In determining that Pena-Lojo "was not subject to past torture," the IJ found that

---

[5] 8 C.F.R. § 208.18(a)(1).

[6] *Id.*

[7] 8 C.F.R. § 208.16(c)(3).

[8] *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 592 (3d Cir. 2011) (second alteration in original) (quoting *Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir. 2001)).

[9] *Green v. Att'y Gen.*, 694 F.3d 503, 509 (3d Cir. 2012) (quoting *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010)).

[10] *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019) (quoting *Huang*, 620 F.3d at 388).

[11] *Id.* (second alteration in original) (quoting *Myrie*, 855 F.3d at 518).

3

Pena-Lojo was credible in all but one respect: his account of individuals on a motorcycle shooting at him, narrowly missing him as he leapt behind a tree.[12] The IJ determined that this story was not credible because two affidavits—one submitted by Pena-Lojo's father and another by his fellow community activist—did not mention the shooting. This credibility finding is supported by substantial evidence[13] because we cannot say that "any reasonable adjudicator would be compelled to conclude[,] to the contrary," that Pena-Lojo was credible about this event.[14] Therefore, we will not give further consideration to the evidence of the shooting.

Leaving aside the shooting, the IJ still was required to consider "[e]vidence of gross, flagrant or mass violations of human rights."[15] The IJ and BIA opinions do not explain why the evidence of this kind that is in the record—which is favorable to Pena-Lojo's claim—was disregarded.[16]

The IJ stated that Pena-Lojo "has absolutely introduced evidence . . . that there are issues in Guatemala with treatment of the indigenous community," which include "exploitation of resources in their communities" and "the recent history of . . . arrests, or

---

[12] AR 69-70.

[13] *Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir. 2005) ("Adverse credibility determinations, like other factual findings in immigration proceedings, are reviewed under the substantial evidence standard.").

[14] *Nasrallah*, 140 S. Ct. at 1692 (quoting 8 U.S.C. § 1252(b)(4)(B)).

[15] 8 C.F.R. § 208.16(c)(3).

[16] *See Quinteros*, 945 F.3d at 786.

4

in some cases, killings or assassinations."[17] The IJ also noted Pena-Lojo's expert's affidavit discussing "specific violence that occurred in Peten," Pena-Lojo's region, "over the land rights issues and . . . the cases of land rights defenders who have been killed there, and at times, the lack of a government response to some of these incidents."[18] The IJ then properly turned to a "determin[ation] [of] what specifically is likely to happen to [Pena-Lojo] if he were to return to Guatemala."[19]

The IJ held that Pena-Lojo would not be tortured if removed because he had not been tortured in the past. When Pena-Lojo was engaging in environmental activism, he was "out in the open," running meetings and having his picture taken—but was never detained or subject to any treatment worse than "veiled threats" and unfriendly questions from an auxiliary mayor.[20]

However, Pena-Lojo submitted extensive evidence that conditions in Guatemala have substantially worsened in recent years. Therefore, the question is whether the IJ properly held that Pena-Lojo would be treated the same upon removal as he was before his departure sometime between 2013 and 2016.[21]

Pena-Lojo's expert witness, who has traveled to Guatemala to investigate threats

---

[17] AR 68-69.
[18] AR 69.
[19] AR 69.
[20] AR 70.
[21] Pena-Lojo says that after he was removed from the U.S. for the second time, in 2013, he re-entered that same year. In any event, he returned at some point before November 2016, when federal agents arrested him. DHS AR 43.

and assassinations in rural communities, stated in her affidavit that 52 "human rights defenders" were assassinated in indigenous areas in 2017, a 325% increase over 2016. She has traveled twice to Peten, and she described the killings of two defenders there in 2013 and 2015. The expert opined that Pena-Lojo would be "visible and vulnerable" to attacks and assassination attempts "wherever he went inside Guatemala" because he is a "highly visible figure as a spokesperson for and leader of a community that has disputed the usurpation of their lands."[22]

In addition to the expert's report, Pena-Lojo offered significant evidence of a rising tide of human rights violations in Guatemala since 2016. The Inter-American Commission on Human Rights reported that murders of human rights defenders increased each year from 2014 to 2017 and noted an "unacceptable increase of violence" in 2017 alone.[23] Also in 2017, the United Nations announced that environmental rights defenders in Guatemala "are the most at-risk defenders in the world."[24]

In 2018, Amnesty International reported that seven human rights defenders had been killed in Guatemala over the course of four weeks, and the 2018 U.S. State Department Human Rights Report said that "[a]t least nine rural, indigenous activists and human rights defenders were killed or died under disputed circumstances between May

---

[22] AR 243-44.
[23] AR 400.
[24] AR 352.

and September."[25]

In January 2019, National Public Radio reported that indigenous Guatemalans "worr[ied] that the violence [of the 1990s] [was] making a comeback" because "[i]n just the last year, 26 members of mostly indigenous *campesino* [i.e., peasant] organizations have been killed."[26] The article quoted a U.S. researcher saying that "Guatemala is on the verge of a major human rights catastrophe," and an indigenous Guatemalan leader saying that "Guatemala has entered 'a new stage of repression' – one focused on 'assassinating community leaders who defend their territories'" against environmental degradation.[27]

Based on investigations in mid-2019, Amnesty International continued to report on "increase[d] . . . risks faced by human rights defenders."[28] In July 2019, Global Witness reported a "five-fold surge in killings" of land and environmental defenders.[29] In September 2019, Peace Brigades International reported that "[v]iolence against human rights defenders [had] been increasing" for the prior two months, and throughout the year, "at least one human rights activist [had been] killed every two weeks."[30]

We do not take issue with the fact that the agency did not "discuss every piece of [this] evidence."[31] Rather, the problem is that the IJ and BIA ignored evidence favorable

---

[25] AR 298.
[26] AR 662.
[27] AR 662, 665.
[28] AR 490.
[29] AR 578.
[30] AR 497.
[31] *Green*, 694 F.3d at 509 (quoting *Huang*, 620 F.3d at 388).

to Pena-Lojo and did not explain why.[32] The IJ stated that Pena-Lojo would be treated the same as he was before 2013 or so, but did not square that assertion with the evidence, all from the record, that we have just discussed.

The IJ added that Pena-Lojo's fellow activist, Edvin Amador, "appears to continue his activism in Guatemala on behalf of his community without being harmed."[33] But Amador stated: "I live in fear of suffering attacks on my life . . . [W]e do not leave here because we cannot and especially because we hope that conditions change."[34] Amador said community leaders are "key targets."[35] He recounted the killing of one such leader in 2016 and stated his concern for an activist friend whose brother had been murdered a month before and "who [was] being threatened with death" at the time the affidavit was written in December 2019.[36] If the reports about increasing danger to activists are to be

---

[32] *See Quinteros*, 945 F.3d at 786 (quoting *Huang*, 620 F.3d at 388).
[33] AR 71.
[34] AR 744.
[35] AR 745.
[36] AR 745.

ignored, Amador's affidavit does not provide the basis to do so.[37]

Because the IJ and BIA do not explain why evidence favorable to Pena-Lojo is to be disregarded, the proper course of action is to grant the petition and remand.[38] In light of this disposition, we need not consider Pena-Lojo's arguments that the IJ and BIA did not complete the required steps of the analysis of the likelihood of torture, and that the BIA applied the incorrect standard of review.

---

[37] *Blanco v. Att'y Gen.*, 967 F.3d 304, 313 (3d Cir. 2020), contains reasoning analogous to our thinking here. In *Blanco*, the agency denied the petitioner's asylum application, emphasizing that "despite . . . death threats, Blanco remained unharmed." *Id.* at 313. We held that the agency did not apply the proper standard because "if Blanco's persecutors had followed through with their threats—as the BIA and IJ seem to suggest was necessary—Blanco would be dead." *Id.* Similarly here, it seems that, according to the IJ's logic, the only way Pena-Lojo could support his application for CAT protection would be to submit an affidavit from a community activist who was subsequently assassinated. That is not a faithful application of the CAT standard. *See* 8 C.F.R. § 208.16(c)(2) (petitioner must show that "it is more likely than not that he . . . would be tortured if removed").

[38] *See Quinteros*, 945 F.3d at 787; *Huang*, 620 F.3d at 388.